# United States District Court

_____ **MIDDLE** _____ DISTRICT OF _____ **ALABAMA** _____

| | |
|---|---|
| **In the matter of the Search of**<br>(Name, address or brief description of person, property or premises to be searched)  | APPLICATION AND AFFIDAVIT<br>FOR SEARCH WARRANT<br><br>CASE NUMBER: 2:07mj45-TFM |

**2630 Whispering Pines Drive**
**Montgomery, AL 36116**

I, __John Bret Hamilton_____ being duly sworn depose and say:

I am a(n) __Drug Enforcement Administration Special Agent__ and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

**2630 Whispering Pines Drive**
**Montgomery, AL 36116**

in the _____ Middle _____ District of _____ Alabama _____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

**See Attachement A, which is incorporated herein by reference,**

which are **contraband, evidence of a crime, fruits of a crime, or things otherwise criminally possessed**,

concerning violations of Title __21 United States Code, Sections 841(a)(1) and 846__.

The facts to support the issuance of a Search Warrant are as follows:

**SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED BY REFERENCE HEREIN**

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

April 12, 2007 @ 3:00pm                               at   Montgomery, Alabama
Date                                                        City and State

Terry F. Moorer, U.S. Magistrate Judge                _____
Name and Title of Judicial Officer                      Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF
# SEARCH WARRANT FOR
# 2630 WHISPERING PINES DRIVE
# MONTGOMERY, AL

1. I, John Bret Hamilton, a Special Agent of the Drug Enforcement Administration, United States Department of Justice, being duly sworn, deposes and states the following:

## APPLYING OFFICER

2. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code. I am empowered by law to conduct investigations of and to make arrests for the offenses enumerated in Section 2515, Title 18, United States Code.

3. For approximately eleven (11) years I have been so employed as a Special Agent of the DEA. Since that time, I have participated in investigations involving organized crime and narcotics activities. I, along with members of the investigative team I work with have received specialized training in identifying and investigating narcotics distribution enterprises and their related criminal activities, including monetary and asset laundering. I, along with members of the investigative team I work with have participated in all or parts of a number of such investigations. Members of the investigative team I work with have gained investigative specialization in the area of methamphetamine, cocaine, marijuana, and/or polydrug conspiracies. I, along with members of the investigative team have received in service continuing professional education in this area of law enforcement and review agency and other publications to stay abreast of developments in this field of law enforcement.

4. My training and participation in investigations of narcotics traffickers and others involved in illegal businesses and activities have given me knowledge to recognize the methods used by narcotics traffickers and money launderers to conceal their assets, income and activities from the government and other third parties. Based on my training and experience, I know the following:

    a. that drug traffickers generate tremendous profits from these illegal activities. These individuals attempt to hide their illegal activities to avoid detection by law enforcement agencies;
    b. that drug traffickers often place assets, purchased by them, in names other than their own to avoid detection of these assets by law enforcement agencies;
    c. that even though these assets may be in other persons' names, the drug traffickers continue to use these assets and exercise control over them;

d. that drug traffickers must maintain large amounts of currency and/or controlled substances readily accessible to them in order to maintain and finance their ongoing illegal activities;

e. that drug traffickers maintain books, records, receipts, bank statements and records, money drafts, letters of credit, money orders, cashier's checks, documents relating to safety deposit boxes, and other documents and audio and video tape recordings evidencing the acquisition, secreting, transfer, and concealment of assets and currency. These records are maintained at a place such as a residence, business, and safety deposit box where the individual has ready access to these documents and they are concealed from law enforcement authorities;

f. that drug traffickers commonly "front" (provide illegal controlled substances on consignment) to their clients. That books, records, receipts, handwritten notes, ledgers, and audio and video tape recordings are maintained for the purpose of documenting fronted controlled substances to these individuals. These records are maintained at a residence, business, or safety deposit box where the individual has ready access to these documents and they are concealed from law enforcement authorities;

g. when drug traffickers accumulate profits from the sale of these drugs, they frequently try to legitimize those profits. In order to accomplish this, they utilize foreign and domestic banks, accounting firms, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate and business fronts;

h. that drug traffickers commonly maintain addresses or telephone numbers and books or papers which reflect names, addresses and/or telephone numbers of their associates and clients in their drug trafficking activities and that they maintain these records at their residence, the residence of relatives, the residence of a girlfriend, business, or in a safety deposit box where they are concealed from law enforcement authorities;

i. that drug traffickers maintain safety deposit boxes as a place to store the large amounts of currency generated through the sale of illegal drugs. Safety deposit boxes are used because the individual has ready access to the contents of these boxes and the contents are concealed from law enforcement authorities including the Internal Revenue Service;

j. that drug traffickers purchase and maintain caches of precious metals, jewelry and other items of value relating to obtaining, transferring, secreting or spending large sums of money made from engaging in drug trafficking activities at their residence, business, automobiles, storage buildings and safety deposit boxes;

k. that drug traffickers frequently take or cause to be taken photographs or videotapes of themselves, their associates, their properties, and their contraband and that these traffickers maintain these photographs or videotapes at their residence, business, and safety deposit box;

l. that drug traffickers attempt to conceal their methods of travel by using false names and identification;

2

    m. that drug traffickers attempt to conceal their methods of communications and contacts with associates (use of telephones or other communication devices);
    n. that drug traffickers often use scanners, and electronic equipment for communication and detection of transmitters and recorders;
    o. that drug traffickers maintain firearms which are readily accessible for use as protection of the trafficker, his cash or other valuables, and drugs, and for use during and in relation to drug trafficking, and that Federal courts have consistently recognized firearms as "tools of the trade" of drug trafficking;

5. Presently, I am part of a team of highly experienced narcotics and law enforcement agents/officers. This team has been investigating the criminal activities committed by a narcotics organization that the investigative team has identified as operating in violation of Title 21, U.S.C. Section 841, 843(b), and 846 and other statutes.

## INTRODUCTION

6. This affidavit is submitted in support of an application for the issuance of a search warrant for 2630 Whispering Pines Drive, Montgomery, Alabama, which is located in Montgomery County. It is my opinion and the opinion of the investigative team as experienced, trained narcotics investigators, there exists probable cause to believe that evidence will be found in violation(s) of 21 U.S.C. 841 and 846 (possession with intent to distribute/distribution of controlled substances, and/or conspiracy to do so): of 21 U.S.C. 843(b) (unlawful use of a communications facility to distribute cocaine. The violations have been committed by persons known and as yet unknown to the investigators.

7. Cocaine hcl (also referred to as powder cocaine) and cocaine base (also referred to as crack cocaine) are the drugs that are the primary focus of this investigation. Based on information supplied by the confidential sources, as well as the analysis of the information generated by the investigators to date, it is conservatively estimated that the known members of the enterprise are directly responsible for supplying large quantities of cocaine hcl and cocaine base to distributors and abusers in the Montgomery, AL and surrounding areas. Confidential source information received as recently as the date of this affidavit has revealed that the organization is continuing to traffic in cocaine hcl and cocaine base.

8. Since this affidavit is being submitted for the limited purpose of securing authorization for the acquisition of a search warrant for the listed location, I have set forth only the facts that I believe provide a necessary foundation for the issuance of the search warrant for the listed and described location.

9. The statements contained in this affidavit are based in part on reports provided by Special Agents of the Drug Enforcement Administration, on reports and

conversations with detectives and officers who work within Montgomery County and on information provided by reliable confidential sources of information, on conversations intercepted through lawfully authorized electronic surveillance and the background of the members of the investigative team.

## CURRENT INVESTIGATION

10. On December 21, 2006, DEA Agents met with CS-07-124404 (hereafter referred to as the CS) to arrange an undercover meeting with an individual named Jamica LAWSON. The CS explained that he/she had spoken with LAWSON by calling his cell phone (334) 301-2514. According to the CS, LAWSON wanted the CS to meet him in the parking lot of the Montgomery Flea Market at the corner of Woodley Drive and Southern Blvd. The CS was supposed to call LAWSON back when he/she arrived.

11. The CS and his/her vehicle were searched for drugs, weapons, large sums of money and other contraband with negative results. The CS was also given official authorized funds (OAF) to be used to purchase cocaine base with. At approximately 12:00 PM the CS met with LAWSON at the Montgomery Flea Market where LAWSON told the CS that his source of supply (SOS) for the cocaine base would arrive in a few minutes with the drugs. LAWSON also called someone on his cell phone in front of the CS and asked where the person was. After the call, LAWSON again stated that his SOS would be there any second. At approximately 12:20 PM, agents observed a silver Nissan with Alabama License Plate CB8393 pull into the parking lot and park next to LAWSON'S vehicle.

12. LAWSON instructed the CS to give him the money for the cocaine base. The CS then gave LAWSON $675.00 of the OAF. LAWSON exited the CS' vehicle and entered the passenger side of the silver Nissan. After approximately two minutes LAWSON exited the Nissan and returned to the CS' vehicle. LAWSON then gave the CS a clear plastic bag containing approximately one ounce of an off white granular substance which was later sent to the DEA Laboratory for testing and analysis. The test of the substance showed that the active drug ingredient is cocaine base. The silver Nissan drove away from the Flea Market followed by agents who were able to later identity the driver as Terrance CAFFEY.

13. On January 12, 2006, agents met with the CS to arrange an undercover meeting with Jamica LAWSON. The CS explained that he/she had spoken with LAWSON by calling his cell phone (334) 301-2514. According to the CS, LAWSON wanted the CS to meet him/her at an apartment at the Hidden Creek Apartment Complex located at 3923 Woodley Road, Montgomery, AL. The CS and his/her vehicle were again searched for drugs, weapons, large sums of money and other contraband with negative results. The CS was then equipped with an audio and video recording device. The CS was also given official authorized funds (OAF) to be used to purchase cocaine base with.

4

14. At approximately 3:15 PM on January 12, 2006, the CS received a call from LAWSON who stated that the SOS was on his way to the apartment and that he should arrive within thirty minutes. The CS was then instructed to drive to the apartment complex and remain in the parking lot. Agents followed the CS and at approximately 3:30 PM, observed the CS park and exit his/her vehicle near the entrance to apartment 306 at the above mentioned apartment complex.

15. At approximately 4:00 PM on January 12, 2006, agents observed LAWSON approach the CS from the above mentioned apartment complex. Via the audio transmitter, agents could hear LAWSON tell the CS that the SOS was on his way and should be there any second. At approximately 4:05 PM, a black Ford Taurus occupied by two black males arrived and parked near the CS and LAWSON. The Ford Taurus was bearing Alabama License Plate 2C5970J. When LAWSON saw the vehicle, he immediately stated that was the SOS and asked the CS for the money. The CS gave LAWSON the $1,400.00 of OAF and LAWSON walked to the vehicle and sat in the back seat. According to the CS, it was obvious that LAWSON was talking with the driver. After several seconds, LAWSON exited the vehicle, walked back to the CS gave him/her a plastic bag tied in a knot containing approximately two ounces of an off white granular substance which was later sent to the DEA Laboratory for testing and analysis. The test of the substance showed that the active drug ingredient is cocaine base.

16. The CS later explained that he/she recognized the driver of the Ford as Terrance CAFFEY from when SA Hamilton had shown him/her a picture of CAFFEY earlier in the day. Agents also followed CAFFEY and the other black male in the Ford Taurus as they departed the Hidden Creek Apartment Complex. They drove a couple of blocks to a house located at 2630 Whispering Pines Drive. This is the address listed on the driver's license of Terrance Deandre CAFFEY. Agents observed CAFFEY exit the vehicle and enter the house while the second black male remained in the vehicle. Less than two minutes later, CAFFEY exited the house and he and the second black male drove away. As they were traveling along Southern Boulevard, TFA Spivey was able to take a picture of them to ensure a positive identification.

17. On 12-21-2006, AllTell Communication was served with an administrative subpoena. The subpoena requested current subscriber information for cell phone number (334)301-2514, the cell phone used by Jamica LAWSON. Furthermore, the subpoena requested calls placed to and from the given number on 12-21-06. During approximately 12:00 pm and 12:20 pm, the cooperating source was with LAWSON when LAWSON called his source of supply. Analysis of the calls made to and from the cell phone on 12-21-06 between 12:00 pm and 12:20 pm showed only one phone number, (334)538-4217, either calling or being called by LAWSON'S cell phone.

18. On 01-10-07, Sprint/Nextel Communication was served with an administrative subpoena. The subpoena requested current subscriber information for cell phone

5

number (334)538-4217. As described above, Jamica LAWSON called this number to contact his source of supply, Terrance CAFFEY, for a quantity of cocaine base. Pursuant to the subpoena, Sprint/Nextel Communications provided the following information:

    Account Number: 0131792693
    Account Establish Date: 04-22-03
    Subscriber Name: Margie CAFFEY
    Address: 2630 Whispering Pine Dr., Montgomery, AL 36116
    Subscriber SSN: 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
    Account Holder DOB: 06-02-41

19. A check of the Alabama Department of Public Safety records revealed that license plate number 2C5970J (mentioned above as being driven by CAFFEY) is assigned to a 1999 black Ford Taurus which is owned by Enterprise Rent-A-Car.

20. On 01-16-07, SA Hamilton spoke with a manager of Enterprise who provided a copy of the rental contract for the above mentioned vehicle. The contract showed that the vehicle had been rented by Terrance CAFFEY on 01-09-07, and the Enterprise Manager stated that CAFFEY was still operating the vehicle. The contract also showed the following information regarding CAFFEY:

    Address: 2630 Whispering Pine Dr, Montgomery, AL 36116
    License: 9317301
    Exp: 03-13-10
    DOB: 03-04-75
    Home Phone: (334) 284-5459(the number for 2630 Whispering Pine Dr)
    Work Phone: (334) 538-4217  **NOTE:** Toll records show that the above listed work phone number is the same number called by LAWSON on 12-21-06, just minutes prior to him meeting with his source of supply and receiving approximately one ounce of cocaine base which he, in turn, sold to a cooperating source.

21. The Enterprise Manager also explained that CAFFEY had been continuously renting a vehicle from Enterprise since 10-25-06. According to Enterprise records, CAFFEY has spent approximately $4,000.00 on rental vehicles since 10-25-06.

22. On February 2, 2007, at approximately 6:30 PM, Montgomery Police Department (MPD) Uniform Patrol Officers were conducting surveillance at the Storage Depot, 4176 Troy Highway, Montgomery, Alabama due to recent burglaries in the area. While watching the business, officers observed a silver Nissan Altima bearing Alabama tag CB8393 (mentioned above) enter the storage facility and park in front of unit 1002. A black male, later identified as Terrance CAFFEY, exited the vehicle and went inside the unit.

23. Approximately 10 minutes later, CAFFEY was observed exiting the unit with a large bulky bag under his left arm. CAFFEY got back inside his vehicle and left the storage area. Officers watched as CAFFEY exited the parking lot onto Troy Highway and drive away very fast. Officers decided to follow CAFFEY and observed him change from the far right hand land into the far left hand lane without signaling.

24. After committing a several traffic violations, officers stopped CAFFEY and approached the vehicle. Officers could smell a strong odor of marijuana emitting from inside the vehicle. CAFFEY was asked to exit the vehicle and a pat down of CAFFEY and his vehicle was conducted for officer safety.

25. While conducting the pat down, officers observed a large bundle of currency in plain view on the back seat and located a gallon size zip-lock bag containing a green leafy substance believed to be marijuana under the passenger's seat. CAFFEY was taken into custody and transported to MPD Narcotics Office.

26. MPD SGT Wright read CAFFEY his rights using the Montgomery Police Department Rights form. CAFFEY agreed to give a statement but declined to give a written or taped statement. CAFFEY stated the vehicle belongs to his mother and that he drives it on occasion. CAFFEY stated he was aware officers found marijuana inside the vehicle but did not know how it got there. CAFFEY advised SGT Wright that he did not want to answer any further questions without a lawyer.

27. MPD CPL James was able to secure a drug search warrant for the business Storage Depot Unit 1002 located at 4176 Troy Highway based on the above information. At approximately 10:27 PM, MPD Officers executed the search warrant and made entry into Storage Depot Unit 1002 with a key which was in CAFFEY's possession. During the search, officers located approximately 15 pounds of suspected marijuana, approximately 292.0 grams of suspected powder cocaine, and approximately 49.0 grams of suspected crack cocaine, and assorted paper documents bearing CAFFEY's name. CAFFEY was charged with Trafficking in Cannabis and Trafficking in Cocaine and placed in the Montgomery County Detention Facility under a $300,000.00 bond.

28. On February 5, 2007, agents discovered that CAFFEY was currently on probation with the State of Alabama for Unlawful Possession of Marijuana First Degree. CAFFEY's probation officer is Keith Ray with Elmore County. Agents contacted PO Ray and discovered that CAFFEY had bonded out of the Montgomery County Detention Facility over the weekend and had just left PO Ray's office. CAFFEY had not informed PO Ray of his arrest.

29. On March 08, 2007, an order was signed by United States Magistrate Judge Charles S. Coody authorizing agents from DEA to install a pen register, caller identification, and trap and trace device for a period of sixty days for **(334) 301-**

2514, Jamica LAWSON'S cell phone. On March 9, 2007, the pen register, caller identification and trap and trace device on (334) 301-2514 was activated. Analysis of the pen register for Jamica LAWSON'S cell phone shows that six calls have been made to or from (334) 538-4217, Terrance CAFFEY'S cell phone. The most recent call was placed on 28 March, 2007.

30. Based on my investigation and my discussions with other law enforcement agents, and the CS, as set forth above, I have probable cause to believe that Terrance CAFFEY is engaged in drug trafficking and an ongoing narcotics conspiracy as set out above and that CAFFEY is utilizing 2630 Whispering Pines Drive, Montgomery, Alabama, in furtherance of his drug activity.

31. Wherefore, your affiant respectfully requests of the Court based upon the facts and circumstances set forth herein and incorporated herein by reference, that probable cause be found to exist such that the crimes alleged herein has been and/or are being committed by Terrance CAFFEY and others in concert with him within the residence described above. I further request that the court find that there is probable cause to believe that the property described in the Property to be Seized (Attachment A) to this Affidavit for Search Warrant and any and all other material evidence of violations of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, 853, 881, will be located at that location. It is further requested that this affidavit, the attached application be sealed until further order of the Court.

_____
John Bret Hamilton, Special Agent
Drug Enforcement Administration
Affiant

Sworn to and subscribed by me this the 12th day of April, 2007.

_____
United States Magistrate Judge

## ATTACHMENT "A"

### Property to be Seized

1. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchasing, and distribution of controlled substances.

2. Papers, tickets, notes, schedules receipts, and other items relating to domestic and interstate travel.

3. Books, records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's checks, receipts, pass books, bank checks, safety deposit box keys, and other items evidencing the obtaining, secreting, transferring, and/or concealing of assets and the obtaining, secreting, transferring, concealing, and/or expending of money;

4. United States currency, precious metals, jewelry, and financial instruments, including stocks and bonds in amounts indicative of the proceeds of illegal narcotics trafficking.

5. Photographs, video tapes in particular, of co-conspirators, of assets and/or of controlled substances.

6. Receipts for items evidencing the expenditure of the proceeds of drug distribution, including, but not limited to, clothing, furniture, and electronic equipment.

7. Paraphernalia for packaging, cutting, weighing, converting, and distributing controlled substances, including, but not limited to scales, baggies, spoons, walkie-talkies, CB's, night-vision devices, two-way radios, police scanners, cellular phones, and beepers.

8. Indicia of occupancy and residency, and/or ownership of the premises, including but not limited to, utility and telephone bills, cancelled envelopes, and keys.